STATE OF NORTH CAROLINA v. ROBERT GREGORY BOYD

No. COA09-142

(Filed 15 September 2009)

**1. Constitutional Law— right to counsel—forfeiture—obstructing and delaying proceedings—substitute counsel denied**

The trial court did not abuse its discretion by denying defendant's motion for substitute counsel in an indecent liberties prosecution. Although the trial court did not make the N.C.G.S. § 15A-1242 inquiry, defendant forfeited his right to counsel by willfully obstructing and delaying proceedings. Forfeiture does not require a knowing and voluntary waiver.

**2. Evidence— credibility of victim—admission not plain error**

There was no plain error in an indecent liberties prosecution in the admission of testimony from a social worker that the victim's disclosure was plausible and consistent. Given the other evidence, it was unlikely that the jury would have reached a different result without this testimony.

**3. Sentencing— prior record level—no stipulation by pro se defendant**

The trial court erred by determining a *pro se* defendant's prior record level on the basis of a worksheet prepared by the State without any stipulation by defendant.

Appeal by defendant from judgment entered 9 September 2008 by Judge Quentin T. Sumner in the Halifax County Superior Court. Heard in the Court of Appeals 20 August 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Angenette R. Stephenson, for the State.*

*Ryan McKaig for defendant.*

BRYANT, Judge.

On 6 August 2007, defendant Robert Gregory Boyd was indicted on one count of indecent liberties with a minor for offenses committed 22 April 2007 against his daughter. During the 8 September 2008 term of the Halifax County Superior Court, a jury convicted defendant on this charge. After determining defendant's prior record level of III, the trial court sentenced him to twenty-one to twenty-six months imprisonment. Defendant appealed. On 17 March 2009, defendant moved to strike the second argument in his brief and his sixth assignment of error; this Court granted the motion on 2 April 2009. We find no error at trial but vacate and remand for resentencing.

*Facts*

On 11 August 2008, defendant's second appointed counsel, Sam Barnes, moved to withdraw from the case, citing disagreements over trial strategy and communication problems with his client. Although defendant supported Mr. Barnes' motion to withdraw, the trial court denied it. Defendant's original appointed counsel had been permitted to withdraw in June 2008 over disagreements with defendant regarding trial strategy, specifically the original counsel's refusal to file

motions for recusal of one superior court judge and subpoena of another. On 8 September 2008, defendant filed his own motion, styled "Motion to Have the Trial Court Recuse Itself from Hearing this Case," which stated in its entirety: "Alma L [sic] Hinton And Quentin T [sic] Sumner Has [sic] Fixed One Trial Already, I Have Proof[.]" The trial court denied this motion without making any findings of fact or conclusions of law. When defendant requested entry of findings and conclusions, the trial court replied, "I am not talking to you about any grounds. I am denying your motion." Mr. Barnes then renewed his motion to withdraw. Barnes' second motion to withdraw, dated 8 September 2008, stated in relevant part:

4. That during said meeting the Defendant was totally uncooperative with the undersigned counsel to the extent said counsel was unable prepare any type of defense to the charges.

5. That during said meeting the Defendant stated to the undersigned counsel that he did not wish for said counsel to represent him at the trial of these matters and requested of counsel to ask the Court to be released in these matters.

\*\*\*

9. That on September 2, 2008 the Defendant came into the undersigned counsel's office, whereupon, said counsel again, attempted to explain to the Defendant that his case would be tried, by a jury, on September 8, 2008 and in order for said counsel to properly represent the Defendant he needed to assist counsel in the preparation of his defense. Whereas, the Defendant repeatedly told the undersigned counsel that "this case was not going to be tried," and that if counsel could not represent him in the way he (the Defendant) wanted him to, then he (the Defendant) did not wish for this counsel to represent him in these matters. The Defendant further stated to the undersigned counsel that he (the Defendant) "did not trust" the undersigned counsel and did not wish for said counsel to represent him at the trial of these matters.

The trial court allowed the motion to withdraw and then instructed defendant that his trial was to begin at two o'clock that afternoon, and that he would have to represent himself if he could not locate counsel. When defendant did not procure private counsel, the trial court appointed Mr. Barnes as standby counsel and the trial proceeded.

The evidence at trial tended to show the following: The victim was defendant's daughter, aged eleven years at the time of the offense. Defendant and the victim's mother never married, but had lived together off and on for twelve years. In April 2007, they were not living together, but the victim's mother took the victim and her younger brother for an overnight visit in defendant's home. After the brother was asleep, defendant asked the victim to play cards and suggested they do so in the bedroom so as not to wake the brother. The victim agreed and defendant locked the bedroom door. However, instead of playing cards, defendant asked the victim to put lotion on his back. After a few minutes, defendant told the victim she wasn't doing it right and offered to show her the right way. Defendant had the victim remove her shirt and began rubbing lotion on her back and legs, eventually touching her vagina. Defendant asked the victim how this felt and repeatedly asked, "You aren't going to tell anyone, are you' " The victim told defendant to stop and later called her grandmother to pick her up. At trial, Officer Winifred Bowens, the patrol sergeant who interviewed the victim on the night of the offense, read the victim's statement before the jury. Pamela Crowell of the Halifax County Department of Social Services testified regarding what the victim had told her during interviews about the incident. Jessica Dosher, a forensic interviewer and social worker from the Tedi Bear Children's Advocacy Center in Greenville, testified about her interview of the victim and a video of the interview was played for the jury. Ms. Dosher also read a line from her written report stating that the victim's "disclosure was plausible and consistent."

---

On appeal, defendant contends the trial court erred in: I) denying his motion for substitute counsel and thus requiring him to represent himself; II) allowing certain social worker testimony which amounted to commenting on the credibility of the victim; and III) finding defendant a prior record level III offender.[1] For the reasons discussed below, we find no error at trial. However, we vacate defendant's sentence and remand for resentencing.

*I*

**[1]** Defendant first argues that the trial abused its discretion in "denying [his] motion for substitute counsel and requiring [him] to

---

1. In his brief, defendant also argued that the trial court erred in failing to enter findings of fact and conclusions of law supporting its order denying defendant's motion for recusal. However, on 2 April 2009, we granted defendant's motion to strike this argument.

represent himself at trial." We disagree and conclude that defendant forfeited his right to counsel.

We begin by noting that defendant did not move for substitute counsel before or during his trial. While defendant supported Mr. Barnes' motion to withdraw, he never requested appointment of substitute counsel thereafter. Defendant now urges this Court to treat his comments to the trial court that he was not receiving a fair trial as such a motion, but we decline to do so. After a careful review of the transcript, we find nothing that could reasonably constitute a motion or request for substitute counsel. Therefore, that portion of defendant's argument is inapposite and we overrule his seventh assignment of error. However, defendant has adequately preserved and raised the issue of waiver of his right to counsel.

An indigent defendant has the right to have competent counsel appointed to represent him. *State v. Robinson,* 290 N.C. 56, 64, 224 S.E.2d 174, 178-79 (1976). This right to counsel "also implicitly gives a defendant the right to refuse counsel and conduct his or her own defense." *State v. Thacker,* 301 N.C. 348, 353-54, 271 S.E.2d 252, 256 (1980) (citing *Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562 (1975)). "[T]he waiver of counsel, like the waiver of all constitutional rights, must be knowing and voluntary, and the record must show that the defendant was literate and competent, that he understood the consequences of his waiver, and that, in waiving his right, he was voluntarily exercising his own free will." *Id.* at 354, 271 S.E.2d at 256. Pursuant to N.C. Gen. Stat. § 15A-1242, a trial court is required to conduct an inquiry in every case in which a defendant wishes to proceed *pro se. State v. McLeod,* 197 N.C. App. ——, ——, ——, S.E.2d ——, —— (2009).

Here, the record shows the trial court failed to conduct the section 15A-1242 inquiry, which under most circumstances is considered a prejudicial error entitling defendant to a new trial. *State v. Dunlap,* 318 N.C. 384, 389, 348 S.E.2d 801, 805 (1986).[2] However, the State contends that defendant forfeited his right to counsel by his behavior and we agree.

In *State v. Montgomery,* we explained the difference between waiver and forfeiture of counsel:

---

2. We also note that while the trial court did appoint standby counsel to defendant, this is not an acceptable substitute for the right to counsel in the absence of a knowing and voluntary waiver. *Dunlap,* 318 N.C. at 387-88, 348 S.E.2d at 804.

> "Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d. Cir. 1995). A forfeiture results when "the state's interest in maintaining an orderly trial schedule and the defendant's negligence, indifference, or possibly purposeful delaying tactic, combine[] to justify a forfeiture of defendant's right to counsel. . ." La Fave, Israel, & King Criminal Procedure, § 11.3(c) at 548 (1999). "[A] defendant who misbehaves in the courtroom may forfeit his constitutional right to be present at trial," and "a defendant who is abusive toward his attorney may forfeit his right to counsel." *U.S. v. McLeod*, 53 F.3d 322, 325 (11th Cir. 1995).

138 N.C. App. 521, 524-25, 530 S.E.2d 66, 69 (2000). Because forfeiture does not require a knowing and voluntary waiver of the right to counsel, the inquiry pursuant to section 15A-1242 is not required in such cases. *Id.* at 525, 530 S.E.2d at 69.

"Any willful actions on the part of the defendant that result in the absence of defense counsel constitutes a forfeiture of the right to counsel." *State v. Quick*, 179 N.C. App. 647, 649-50, 634 S.E.2d 915, 917 (2006). "A defendant may lose his constitutional right to be represented by the counsel of his choice when the right to counsel is perverted for the purpose of obstructing and delaying a trial." *Id.* at 649, 634 S.E.2d at 917 (citations omitted). In *Quick*, we held that defendant's failure to retain counsel over eight months constituted obstruction and delay of the proceedings and warranted forfeiture.[3] *Id.* at 650, 634 S.E.2d at 918:

Here, defendant likewise obstructed and delayed the trial proceedings. The record indicates that defendant was uncooperative with counsel to the extent that both his court-appointed attorneys withdrew. Defendant's original appointed counsel had been permitted to withdraw in June 2008 over disagreements with defendant including counsel's refusal to file a motion for recusal of Judge Sumner on grounds that various superior judges were in collusion to fix the trial. In Mr. Barnes' first motion to withdraw, he stated that defendant did not want him as counsel and that he could not effectively communi-

---

3. The Court in *Quick* held that the defendant "both knowingly and voluntarily waived his right to appointed counsel and, through his own acts, forfeited his right to proceed with the counsel of his choice." *Id.* at 650, 634 S.E.2d at 918.

cate with defendant. In Mr. Barnes' second motion to withdraw, he stated that defendant had been "totally uncooperative . . . to the extent [Mr. Barnes] was unable to prepare any type of defense to the charges." Further, "[d]efendant repeatedly told [Mr. Barnes] that 'this case was not going to be tried . . . .' " Based on this evidence in the record, we conclude that defendant willfully obstructed and delayed the trial court proceedings by refusing to cooperate with either of his appointed attorneys and insisting that his case would not be tried. Thus, defendant forfeited his right to counsel.

*II*

**[2]** Defendant next argues that the trial court's admission of Ms. Dosher's opinion that the victim's statements were plausible and consistent constituted plain error. We disagree.

Because defendant failed to object to the testimony at issue during trial, we consider his contentions under the plain error standard N.C.R. App. P. 10(c)(4) (2009). "Plain error has been defined as " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *State v. Maready*, 362 N.C. 614, 621, 669 S.E.2d 564, 568 (2008) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (internal quotation marks and citation omitted) (emphasis in original)).

"It is fundamental to a fair trial that the credibility of the witnesses be determined by the jury . . . . [and thus] an expert's opinion to the effect that a witness is credible, believable, or truthful is inadmissible." *State v. Hannon*, 118 N.C. App. 448, 451, 455 S.E.2d 494, 496 (1995). "[T]he admission of such an opinion is plain error when the State's case depends largely on the prosecuting witness's credibility." *Id.* For example, in *State v. Holloway*, we found plain error in experts' opinions of a child's truthfulness when the child testified to sexual abuse not leaving physical injury, and the defendant testified to the contrary and presented evidence of a normal relationship with the child. 82 N.C. App. 586, 587, 347 S.E.2d 72, 73 (1986). In that case the child did not report the alleged incident until more than four weeks later and there was no suggestion of changed behavior, immediately after or subsequently. *Id.*

Here, in contrast, beyond the victim's testimony, the State also presented evidence that the victim, upset and crying, called her grandmother to pick her up early, gave consistent statements to her mother, Officer Bowens, Department of Social Services staff, and Ms.

Dosher, and exhibited changed behavior following the alleged incident. Defendant did not testify. This additional evidence was such that it is unlikely that the jury would have reached a different conclusion absent Ms. Dosher's testimony about consistency and plausibility. This assignment of error is overruled.

*III*

[3] Finally, defendant argues the trial court erred in determining his prior record level as III on the basis of a worksheet prepared by the State without any stipulation by defendant. We agree and vacate and remand for resentencing.

Errors at sentencing are preserved without objection. *State v. Hargett*, 157 N.C. App. 90, 92, 577 S.E.2d 703, 705 (2003). The State may prove a defendant's prior record level by stipulation, through court or other official records, or by "[a]ny other method found by the court to be reliable." N.C. Gen. Stat. §15A-1340.14(f) (2009). "There is no question that a worksheet, prepared and submitted by the State, purporting to list a defendant's prior convictions is, without more, insufficient to satisfy the State's burden in establishing proof of prior convictions." *State v. Eubanks*, 151 N.C. App. 499, 505, 565 S.E.2d 738, 742 (2002). The State contends that defendant effectively "stipulated" to the worksheet by failing to object to it during sentencing. We have held that "a defendant need not make an affirmative statement to stipulate to his or her prior record level . . ., particularly if defense counsel had an opportunity to object to the stipulation in question but failed to do so." *State v. Alexander*, 359 N.C. 824, 829, 616 S.E.2d 914, 918 (2005). In that case, defendant's *counsel* "specifically stated that 'up until this particular case he had no felony convictions, as you can see from his worksheet' [indicating] not only that defense counsel was cognizant of the contents of the worksheet, but also that he had no objections to it." *Id.* at 830, 616 S.E.2d at 918.

Here, however, defendant was acting *pro se* and made no such comment from which we can infer a stipulation. The transcript reveals that when the worksheet was presented at sentencing, defendant asked the court, "What does that mean' " Defendant's question makes plain that he did not understand the worksheet, much less stipulate to it. The court informed defendant that the worksheet meant that he had "seven prior conviction points for purposes of sentencing, which would mean you would be what is known as a Level 3 for a class F felony." After asking defendant to stand, the

court asked if he had anything to say, to which defendant stated his desire to appeal. This exchange is unlike that between the court and counsel in *Alexander*, and we see no evidence of stipulation by defendant to his prior record level. Defendant is entitled to a new sentencing hearing.

NO ERROR AT TRIAL.

VACATED AND REMANDED FOR RESENTENCING.

Judges Calabria and Elmore concur.