STATE OF NORTH CAROLINA v. CURTIS EDWIN LEYSHON

No. COA10-1144

(Filed 3 May 2011)

## 1. Constitutional Law— right to counsel—no waiver—forfeiture

The trial court in a driving while license revoked case did not err by appointing counsel against defendant's wishes and then proceeding without defendant's appointed counsel. Defendant had not clearly and unequivocally waived his right to counsel before the appointment and defendant then forfeited his right to counsel by his behavior.

## 2. Appeal and Error— revocation of driver's license—outside scope of judgment appealed

Defendant's contention that his driver's license was revoked without due process was not properly before the Court of Appeals because it was outside the scope of the judgment being appealed.

## 3. Constitutional Law— due process—capacity to proceed—hearing after examination—local hearing

Defendant's due process rights were not violated in a driving while license revoked case because N.C.G.S. § 15A-1002 did not require the court to conduct a hearing *before* ordering an examination of defendant's capacity to proceed and defendant did not request a hearing after his examination was completed. Furthermore, although the trial court erred by ordering defendant, who was charged only with a misdemeanor, committed to a state facility to determine his capacity to proceed before he had a local examination, the issue was moot because the terms of the challenged trial court order had already been carried out.

## 4. Evidence— judicial notice—Federal Register—regulations cited not relevant

The trial court did not err in a driving while license revoked case by not taking judicial notice of the Federal Register because the federal regulations defendant cited had no relevance to the North Carolina crime of driving while license revoked.

## 5. Constitutional Law— right to speedy trial—any delay caused by defendant

The trial court did not violate defendant's constitutional right to a speedy trial in a driving while license revoked case. Any

delay in defendant's trial was caused by defendant's failure to state whether he asserted or waived his right to counsel.

Appeal by defendant from judgment entered 9 March 2010 by Judge James U. Downs in Watauga County Superior Court. Heard in the Court of Appeals 10 March 2010.

> *Roy Cooper, Attorney General, by Catherine F. Jordan, Assistant Attorney General, for the State.*

> *Curtis Edwin Leyshon, pro se.*

THIGPEN, Judge.

Defendant Curtis Leyshon appeals from a conviction of driving while license revoked. Five principal issues are presented on appeal: (1) whether the trial court erred by appointing counsel and by proceeding without appointed counsel; (2) whether Defendant's due process rights were violated when the Division of Motor Vehicles ("DMV") revoked his driver's license; (3) whether Defendant's due process rights were violated when he did not receive a hearing before the trial court ordered him committed for an examination to determine his capacity to proceed, and whether the trial court violated Defendant's due process rights by committing him when he was only charged with a misdemeanor; (4) whether the trial court erred by not taking judicial notice of the Federal Register; and (5) whether the trial court violated Defendant's right to a speedy trial. We conclude that Defendant's argument regarding DMV's revocation of his driver's license is not properly before us, and his contention that the trial court violated his due process rights by committing him when he was only charged with a misdemeanor is moot. For all other issues, we find no error. On or about 26 January 2007, Defendant received a citation for driving while license revoked in Watauga County, North Carolina. On or about 13 June 2007, Defendant was found guilty of driving while license revoked in Watauga County District Court. Defendant appealed his conviction to the Watauga County Superior Court.

On 7 January 2008, the trial court held a hearing to determine whether Defendant waived or asserted his right to counsel. Defendant failed to respond to the trial court's inquiry. On 14 July 2008, the trial court held another hearing to determine whether Defendant waived or asserted his right to counsel. Defendant stated, "I'm not waiving my right to assistance of counsel[,]" but when the court appointed counsel, Defendant stated, "I refuse his counsel."

**STATE v. LEYSHON**

[211 N.C. App. 511 (2011)]

When asked by the trial court if he understood that he was charged with driving while license revoked, Defendant responded, "I know the charge[.]" After leaving the courtroom, Defendant was charged with disorderly conduct, littering, and resisting arrest for his behavior in the lobby.

On 13 July 2009, the trial court held another hearing to determine whether Defendant waived or asserted his right to counsel. When asked if he desired to represent himself, Defendant responded, "If the Court has jurisdiction, yes, sir. Until then I can't make an informed decision." The trial court explained that jurisdiction had already been determined, but Defendant refused to answer the court's question. Eventually the court stated, "[m]ark him down [as] he is going to represent himself, madam clerk, and 'll start his case later on today." Defendant continued to challenge the court's jurisdiction until the court decided to refer Defendant for an evaluation to determine whether he had the capacity to proceed. Accordingly, the trial court entered an order committing Defendant for up to 60 days to determine whether or not he had the capacity to proceed in regard to the charges pending against him.

On 3 August 2009, the North Carolina Division of Mental Health (Central Regional Hospital) issued a Forensic Evaluation concluding that Defendant was capable to proceed. The Forensic Evaluation also concluded that Defendant had no mental disorder, had a good knowledge of the legal system and a specialized knowledge of Motor Vehicle Law, clearly understood the consequences of maintaining his position, and knew that there was a method for resolving things at a minimal cost, but rejected that in favor of "standing up for what he believes in."

On 8 March 2010, Defendant was tried in Watauga County Superior Court for driving while license revoked. At trial, Defendant proceeded *pro se*. Defendant began by making numerous motions, including a request that the court take judicial notice of the Federal Register. The court denied Defendant's request, explaining that "[w]e are not under the federal registry." The State presented testimony by Trooper Searcy, the officer who issued the citation to Defendant, which Defendant requested not be transcribed. At the end of the State's evidence, Defendant made a motion to dismiss for failure to state a claim. The State summarized the evidence as follows:

First we showed that the Defendant drove a motor vehicle; That the Defendant drove a motor vehicle on a highway, Highway 105;

And at the time he drove the motor vehicle his driver's license was suspended; And that he had been provided notice of that in that the notice was deposited in the US Mail at least four days before the alleged driving; That the notice was mailed in an envelope with postage prepaid; That the notice was addressed to the Defendant at his address as shown by the records of the Department of Motor Vehicles. That is all included in State's Exhibit 1 that has been admitted. We say and contend that we have come forth by showing each and every element and Defendant's motion to dismiss should be denied.

The court subsequently denied Defendant's motion to dismiss. Defendant then testified on his own behalf and requested that his testimony not be transcribed.

On 9 March 2010, the jury found Defendant guilty of driving while license revoked. The trial court imposed a suspended sentence of 120 days with 30 months supervised probation. Defendant appeals.

On appeal, Defendant argues: (I) the trial court erred by forcing assistance of counsel and by proceeding without appointed counsel; (II) the trial court did not comply with N.C. Gen. Stat. § 15A-1242 because it did not make sufficient inquiry into whether Defendant understood the proceedings and did not advise him of a range of permissible punishments; (III) his due process rights were violated when DMV revoked his driver's license and when the trial court ordered an examination to determine his capacity to proceed; (IV) the trial court erred by not taking judicial notice of the Federal Register; and (V) the trial court violated his right to a speedy trial.

I. Assistance of Counsel

[1] Defendant contends the trial court erred by appointing counsel against Defendant's wishes and by proceeding without Defendant's appointed counsel. Defendant first argues the trial court violated his right to proceed without counsel when it appointed counsel at the 14 July 2008 hearing after Defendant stated he would refuse counsel and had previously waived his right to assistance of counsel at the 19 July 2007 hearing. We disagree.

"The standard of review for alleged violations of constitutional rights is *de novo*." *State v. Graham*, —— N.C. App. ——, ——, 683 S.E.2d 437, 444 (2009) (citation omitted). "Criminal defendants have a constitutional right to the assistance of counsel in conducting their defense. Implicit in this right to counsel is the constitutional right to

refuse the assistance of counsel and proceed *pro se*." *State v. Jackson*, 128 N.C. App. 626, 628, 495 S.E.2d 916, 918 (citations omitted), *disc. review allowed in part*, 348 N.C. 286, 501 S.E.2d 921 (1998); *see also State v. Fulp*, 355 N.C. 171, 174, 558 S.E.2d 156, 158 (2002) (stating that "a defendant has a right to handle his own case without interference by, or the assistance of, counsel forced upon him against his wishes") (quotation marks and citations omitted). Before allowing a defendant to waive representation, a court must ensure that constitutional and statutory standards are satisfied. *Fulp*, 355 N.C. at 174-75, 558 S.E.2d at 159 (citation omitted). "First, the defendant's waiver must be expressed clearly and unequivocally. Second, the trial court must ensure that the defendant's waiver is knowing, voluntary, and intelligent." *State v. Reid*, 151 N.C. App. 379, 385, 565 S.E.2d 747, 752 (citation omitted), *disc. review denied*, 356 N.C. 622, 575 S.E.2d 522 (2002). North Carolina General Statutes section 15A-1242 (2009) requires a trial court to conduct an inquiry in every case in which a defendant wishes to proceed *pro se*, and our Supreme Court has held that this inquiry satisfies any constitutional requirements. *Fulp*, 355 N.C. at 175, 558 S.E.2d at 159 (citations omitted).

In this case, the following exchange occurred at the 14 July 2008 pretrial hearing:

THE COURT: Do you understand you have the right to have an attorney represent you?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you wish to hire –

. . .

THE DEFENDANT: No, ma'am, I don't.

THE COURT: Do you understand you have the right to hire an attorney? Do you understand you have the right to waive an attorney? Do you understand you have a right to a court-appointed attorney?

THE DEFENDANT: I have a right to assistance of counsel.

THE COURT: Which do you want?

THE DEFENDANT: If the Court will not establish on the record jurisdiction, I don't need an attorney.

**STATE v. LEYSHON**

[211 N.C. App. 511 (2011)]

THE COURT: We're given jurisdiction through the Constitution, and the North Carolina Constitution of this state –

. . .

THE COURT: Sir, do you want an attorney or not?

THE DEFENDANT: I want to retain my right to assistance of counsel.

THE COURT: Are you going to hire an attorney? Do you want a court-appointed attorney, or do you want to waive that right?

THE DEFENDANT: As soon as jurisdiction is established.

THE COURT: Sir, if you refuse to answer my question, I'm going to say that you're going to represent yourself.

THE DEFENDANT: I'm not waiving my right to assistance of counsel.

THE COURT: Do you want me to appoint an attorney to assist you?

THE DEFENDANT: If I—if —

THE COURT: The Court will appoint him an attorney to assist him. Who will it be?

. . .

THE COURT: Eric Eller will be your attorney to assist you.

THE DEFENDANT: I'll refuse counsel from him. I refuse counsel.

. . .

THE DEFENDANT: I refuse his counsel.

THE COURT: Okay.

THE DEFENDANT: I refuse it publicly on the record.

. . .

THE COURT: Sir, you'll be here September the 29th ready to try this case.

THE DEFENDANT: I'll have no counsel.

THE COURT: That's fine. You'll represent yourself then.

THE DEFENDANT: I'm reserving my rights.

The court then filed an order appointing Mr. Eller to assist Defendant with his trial. The court noted that it made the order "on the court's own motion."

The transcript shows that Defendant refused to answer whether he waived or asserted his right to counsel, and he made contradictory statements about his right to counsel. During the hearing, Defendant clearly stated, "I'm not waiving my right to assistance of counsel," "I want to retain my right to assistance of counsel[,]" and "I'm reserving my rights." Yet, in the same hearing, Defendant also said "I don't need an attorney[,]" "I refuse his counsel[,]" and "I'll have no counsel" at trial. Furthermore, although Defendant argues in his brief that "[t]he Court determined at the initial proceeding of July 19, 2007 that Defendant could proceed without a lawyer," Defendant refused to sign the waiver of counsel form filed on 19 July 2007, and the trial court noted on the waiver form that Defendant "refused in open court to sign." We conclude the trial court did not err by appointing counsel at the 14 July 2008 hearing because Defendant had not clearly and unequivocally waived his right to counsel.

Defendant also contends the trial court erred when it allowed Defendant's trial to proceed without Defendant's appointed counsel. We disagree and conclude Defendant forfeited his right to counsel.

Here, although Defendant stated that he did not have an attorney when asked by the court before his trial on 8 March 2010, the record shows that Defendant did not clearly and unequivocally waive his right to counsel before the trial court allowed him to proceed *pro se.* Under most circumstances, this is considered a prejudicial error entitling a defendant to a new trial; however, we conclude Defendant forfeited his right to counsel by his behavior. *See State v. Boyd,* —— N.C. App. ——, ——, 682 S.E.2d 463, 466-67 (2009) (concluding that although the trial court failed to conduct the section 15A-1242 inquiry, "defendant forfeited his right to counsel by his behavior").

We have previously outlined the difference between waiver and forfeiture of a defendant's right to counsel:

> Although the loss of counsel due to defendant's own actions is often referred to as a waiver of the right to counsel, a better term to describe this situation is forfeiture. Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right. A forfeiture results

when the state's interest in maintaining an orderly trial schedule and the defendant's negligence, indifference, or possibly purposeful delaying tactic, combine to justify a forfeiture of defendant's right to counsel.

*State v. Montgomery*, 138 N.C. App. 521, 524, 530 S.E.2d 66, 69 (2000) (citations and quotation marks omitted). Where a defendant forfeits his right to counsel by his own conduct, the trial court is not required to determine, pursuant to N.C. Gen. Stat. § 15A-1242, that defendant knowingly, understandingly, and voluntarily waived such right before requiring him to proceed *pro se. Id.* at 525, 530 S.E.2d at 69.

"Any willful actions on the part of the defendant that result in the absence of defense counsel constitutes a forfeiture of the right to counsel." *State v. Quick*, 179 N.C. App. 647, 649-50, 634 S.E.2d 915, 917 (2006) (citing *Montgomery*, 138 N.C. App. at 524, 530 S.E.2d at 69). This court has held that a defendant forfeited his right to counsel in a number of situations. In *Boyd*, —— N.C. App. at ——, 682 S.E.2d at 467, we found that the defendant forfeited his right to counsel because he obstructed and delayed the trial proceedings by refusing to cooperate with either of his appointed attorneys to the extent they both withdrew and by insisting that his case would not be tried. In *Quick*, 179 N.C. App. at 650, 634 S.E.2d at 918, we concluded the defendant forfeited his right to counsel at a probation revocation hearing by failing to retain private counsel over a period of eight months after he signed a waiver forgoing his right to court appointed counsel. Likewise, in *Montgomery*, 138 N.C. App. at 525, 530 S.E.2d at 69, we held that the defendant forfeited his right to counsel, and the trial court did not err by requiring him to proceed *pro se*, when he had fifteen months to obtain counsel, twice released his appointed counsel and retained private counsel, caused the trial to be delayed because he was disruptive in the courtroom on two occasions, and refused to cooperate with his private counsel and assaulted him, thereby resulting in an additional month's delay in the trial.

Here, Defendant similarly obstructed and delayed the trial proceedings. The record shows that Defendant refused to sign the waiver of counsel form filed on 19 July 2007 after a hearing before the trial court. At the 7 January 2008 hearing, the court twice advised Defendant of his right to assistance of counsel and repeatedly asked if Defendant wanted an attorney. Defendant refused to answer, arguing instead, "I want to find out if the Court has jurisdiction before I waive anything." Even after the court explained the basis of its juris-

diction, Defendant would not state if he wanted an attorney, persistently refusing to waive anything until jurisdiction was established. Likewise, at the 14 July 2008 hearing, Defendant would not respond to the court's inquiry regarding whether he wanted an attorney. Defendant adamantly asserted, "I'm not waiving my right to assistance of counsel," but he also verbally refused the assistance of the attorney appointed by the trial court.[1] At the next hearing on 13 July 2009, Defendant continued to challenge the court's jurisdiction and still would not answer the court's inquiry regarding whether he wanted an attorney or would represent himself. Instead, Defendant maintained, "If I hire a lawyer, I'm declaring myself a ward of the Court . . . and the Court automatically acquires jurisdiction . . . and I'm not acquiescing at this point to the jurisdiction of the Court." Based on the evidence in the record, we conclude Defendant willfully obstructed and delayed the trial court proceedings by continually refusing to state whether he wanted an attorney or would represent himself when directly asked by the trial court at four different hearings. Accordingly, Defendant forfeited his right to counsel, and the trial court did not err by proceeding without Defendant's appointed counsel.[2]

## II. Due Process

Defendant next contends his due process rights were violated when the DMV revoked his driver's license because he received nothing but a letter stating that his license was revoked. Defendant also argues his due process rights were violated because (1) he did not receive a hearing before the trial court ordered him committed for an examination to determine his capacity to proceed and because (2) he should not have been committed when he was only accused of a misdemeanor. We address each of these arguments in turn.

### A. Driver's License

[2] Defendant's contention that his driver's license may not be taken away without due process is not properly before us because it is outside the scope of the judgment being appealed in this case. *See Carter v. Hill,* 186 N.C. App. 464, 467, 650 S.E.2d 843, 845 (2007). "Any party entitled by law to appeal from a judgment or order of a superior or

---

1. We note that there is no evidence in the record regarding whether Defendant's appointed counsel withdrew from representing Defendant.

2. Because we conclude Defendant forfeited his right to counsel, the N.C. Gen. Stat. § 15A-1242 inquiry is not required. *Boyd,* —— N.C. App. at ——, 682 S.E.2d at 467. Accordingly, we will not address Defendant's argument that the trial court failed to comply with § 15A-1242.

district court rendered in a civil action or special proceeding may take appeal by filing notice of appeal[.]" N.C. R. App. P. 3(a). The notice of appeal in this case references "the final judgment . . . entered March 9, 2010 in the Superior Court of Watauga County[,]" in which the jury found Defendant guilty of driving while license revoked. Thus, Defendant has properly appealed only from the court's judgment finding him guilty of driving while license revoked, not from the DMV's decision to revoke his license.[3]

B. Commitment for Examination of Capacity to Proceed

[3] Defendant also argues his due process rights were violated because (1) he did not receive a hearing before the trial court ordered him committed for an examination to determine his capacity to proceed and because (2) he should not have been committed when he was only accused of a misdemeanor.

North Carolina General Statutes section 15A-1002 (2009) addresses the determination of capacity to proceed and provides in relevant part:

(b) When the capacity of the defendant to proceed is questioned, the court shall hold a hearing to determine the defendant's capacity to proceed. If an examination is ordered pursuant to subdivision (1) or (2) of this subsection, *the hearing shall be held after the examination.* Reasonable notice shall be given to the defendant and prosecutor, and the State and the defendant may introduce evidence. The court:

(1) May appoint one or more impartial medical experts . . . to examine the defendant and return a written report describing the present state of the defendant's mental health; reports so prepared are admissible at the hearing and the court may call any expert so appointed to testify at the hearing; any expert so appointed may be called to testify at the hearing by the court at the request of either party; or

(2) In the case of a defendant charged with a misdemeanor only after the examination pursuant to subsection (b)(1) of this sec-

3. Defendant had a right to appeal the revocation of his driver's license pursuant to N.C. Gen. Stat. § 20-25 (2009), which provides: "Any person denied a license or whose license has been . . . revoked by the Division . . . shall have a right to file a petition within 30 days thereafter for a hearing in the matter in the superior court of the county wherein such person shall reside, or to the resident judge of the district or judge holding the court of that district, or special or emergency judge holding a court in such district in which the violation was committed, and such court or judge is hereby vested with jurisdiction[.]"

tion . . . may order the defendant to a State facility for the mentally ill for observation and treatment for the period, not to exceed 60 days, necessary to determine the defendant's capacity to proceed[.]

(Emphasis added).

Here, Defendant argues he was entitled to a hearing before the trial court ordered an examination of his capacity to proceed. Section 15A-1002, however, does not require a court to conduct a hearing *before* ordering an examination of a defendant's capacity to proceed. A defendant may request a hearing *after* the examination is complete, but the burden is on the defendant to request a hearing, and failure to do so constitutes a wavier. *State v. Badgett*, 361 N.C. 234, 259, 644 S.E.2d 206, 221 (citations omitted), *cert. denied*, 552 U.S. 997, 128 S.Ct. 502, 169 L. Ed. 2d 351 (2007). In the instant case, Defendant did not request a hearing after his examination was completed; thus, his failure to do so constitutes a waiver. *See id.*

Next, Defendant correctly contends that a defendant charged with a misdemeanor must have a local examination before a trial court can commit him to a State facility for examination of his capacity to proceed. *See* N.C. Gen. Stat. § 15A-1002(b)(2) (providing that "[i]n the case of a defendant charged with a misdemeanor *only after* the examination pursuant to subsection (b)(1) of this section . . . may [a court] order the defendant to a State facility for the mentally ill for observation and treatment") (emphasis added). In this case, the trial court ordered Defendant, who was charged only with a misdemeanor, committed to Central Regional Hospital to determine Defendant's capacity to proceed before Defendant had a local examination. We conclude, however, that this issue is moot.

"Usually, when the terms of a challenged trial court judgment have been carried out, a pending appeal of that judgment is moot because an appellate court decision cannot have any practical effect on the existing controversy." *In re A.K.*, 360 N.C. 449, 452, 628 S.E.2d 753, 755 (2006) (quotation marks and citation omitted). In certain cases, however, the continued existence of the judgment itself may result in collateral legal consequences for the appellant; thus, the appeal is not moot. *Id.* at 452, 628 S.E.2d at 755 (citation omitted); *see In re Webber*, —— N.C. App. ——, ——, 689 S.E.2d 468, 472-73 (2009) (stating that "[w]hen the challenged [involuntary commitment] order may form the basis for future commitment or may cause other collateral legal consequences for the respondent, an appeal of that

order is not moot"), *cert. denied*, 364 N.C. 241, 699 S.E.2d 925 (2010). Unlike an order for involuntary commitment pursuant to North Carolina General Statues Chapter 122C, an order committing a defendant for an examination of capacity to proceed is not an adjudication of being mentally ill and cannot form the basis for future commitment. *See In re Hatley*, 291 N.C. 693, 695, 231 S.E.2d 633, 634-35 (1977) (discussing the collateral consequences of an involuntary commitment order, including the adjudication of being mentally ill and the use of a prior commitment order as the basis for future commitment). Rather, it is merely an order for the examination of a defendant's capacity to proceed. Even when a defendant is found incapable of proceeding, the court must then "determine whether there are reasonable grounds to believe the defendant meets the criteria for involuntary commitment under Part 7 of Article 5 of Chapter 122C of the General Statutes." N.C. Gen. Stat. § 15A-1003(a) (2009).

In the instant case, the court ordered Defendant committed to Central Regional Hospital in Raleigh, North Carolina on 13 July 2009 for a period not to exceed sixty days to determine his capacity to proceed. Defendant was released after his clinical interview on 29 July 2009 and was found capable to proceed. Defendant's term of commitment for examination has already expired by the terms of the 13 July 2009 order. Because the terms of the challenged trial court order have already been carried out, we dismiss this issue as moot.

### III. Judicial Notice

**[4]** Defendant next argues the trial court erred by not taking judicial notice of the Federal Register. We disagree.

Defendant argues that the trial court was required to take "mandatory judicial notice" of certain "facts from the Federal Register," specifically certain provisions of 56 FR 41394, codified at 23 C.F.R. Part 1327 (2009), which implemented the National Driver Register ("NDR") System, and established procedures for states to participate in the NDR Problem Driver Pointer System ("PDPS") and for other authorized parties to receive information from the NDR. *See* 23 C.F.R. § 1327.1. PDPS is "a system whereby the NDR causes information regarding the motor vehicle driving records of individuals to be exchanged between the State which took adverse action against a driver (State of Record) and the State requesting the information (State of Inquiry)." 23 C.F.R. § 1327.3(r).

We first note that Defendant did not ask the trial court to take judicial notice of a "fact" but of the applicable law, as Defendant

argued that he was legally exempt from obtaining a North Carolina driver's license because he was not employed as a "driver" as defined in certain provisions of the Federal Register. N.C. Gen. Stat. § 20-28 (2009) defines the crime of driving while license revoked, and N.C. Gen. Stat. § 20-4.01 (2009) provides the definitions applicable for purposes of Chapter 20. Defendant claims, however, without any citation of relevant authority, that certain definitions from the Federal Register are the controlling law for his case, instead of the applicable North Carolina statutes and the law as stated in the trial court's jury instructions.

Defendant is correct that a court can take judicial notice of provisions of the Federal Register. *See Wright v. McMullan*, 249 N.C. 591, 593, 107 S.E.2d 98, 99 (1959) ("Regulations having general application and legal effect must be published in the Federal Register, 44 U.S.C.A. § 305. The contents of the Federal Register must be judicially noticed, 44 U.S.C.A. § 307. Periodically these regulations are codified and published as Code of Federal Regulations (C.F.R.)."). Defendant's argument fails, however, because the federal regulations he cited have no relevance to the North Carolina crime of driving while license revoked. The definitions of "driver" and "motor vehicle" from the C.F.R. which Defendant claims exempt him from the requirement of having a driver's license are not applicable under N.C. Gen. Stat. § 20-8. The trial court instructed the jury as to the correct definitions of "driver" and "motor vehicle" according to N.C. Gen. Stat. § 20-4.01(7) and (23). In addition, Defendant has not specifically argued on appeal that the jury instructions as given to the jury were incorrect. In any event, the provisions of the C.F.R. as cited by Defendant are irrelevant to the definition of the crime of driving while license revoked under N.C. Gen. Stat. § 20-8, and the trial court properly refused to take judicial notice of them. Defendant's argument is overruled.

## IV. Right to a Speedy Trial

[5] In his last argument on appeal, Defendant contends the trial court violated his constitutional right to a speedy trial. This argument is without merit.

In determining whether a defendant has been deprived of his right to a speedy trial, we review the following factors: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice resulting from the delay." *State v. Webster*, 337 N.C. 674, 678, 447 S.E.2d 349, 351 (1994) (citation omitted). "The length of the delay is not *per se* determina-

tive of whether a speedy trial violation has occurred[,]" and "[t]he defendant has the burden of showing that the reason for the delay was the neglect or willfulness of the prosecution." *Id.* at 678-79, 447 S.E.2d at 351. "A criminal defendant who has caused or acquiesced in a delay will not be permitted to use it as a vehicle in which to escape justice." *State v. Tindall*, 294 N.C. 689, 695-96, 242 S.E.2d 806, 810 (1978) (citations omitted).

In the instant case, Defendant received a citation for driving while license revoked on or about 26 January 2007 and was found guilty in Watauga County District Court on 13 June 2007. On 19 July 2007, 7 January 2008, 14 July 2008, and 13 July 2009, the court held hearings to determine whether Defendant waived or asserted his right to counsel, but Defendant failed to respond to the trial court's inquiry. At the 14 July 2008 hearing, Defendant stated, "I'm invoking my right to a speedy trial on the record. Make sure that's on the record. It's been 16 months I've been trying to ascertain jurisdiction of the court."

We find that any delay in Defendant's trial was caused by Defendant's failure to state whether he asserted or waived his right to counsel. The trial court held four hearings because Defendant refused to waive or assert his right to counsel. Defendant caused this delay. *See Tindall*, 294 N.C. at 695-97, 242 S.E.2d at 810 (holding that the defendant was not deprived of his right to a speedy trial because much of the delay was caused by defendant and he suffered no significant prejudice as a result of the delay). Although Defendant asserted his right to a speedy trial at the 14 July 2008 hearing, he failed to show that the reason for the delay was the neglect or willfulness of the prosecution, and he failed to show that he was prejudiced by the delay. *See State v. Spivey*, 357 N.C. 114, 122, 579 S.E.2d 251, 257 (2003) (stating that a defendant must show "actual, substantial prejudice" as a result of the delay). After balancing the four factors set forth above, we hold that Defendant's constitutional right to a speedy trial has not been violated.

Dismissed in part, no error in part.

Judges STROUD and HUNTER, JR. concur.